**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | )  No. 13-04026-01/02-CR-C-FJG |
| | ) |
| Plaintiff, | ) **Count 1**: (both defendants) |
| | )   18 U.S.C. § 371 |
| v. | )        NMT 5 years and/or $250,000 |
| | )        Supervised Release: NMT 3 years |
| **DARYA CHERNOVA** | )        Class D Felony |
|   [DOB: 1/1/1975] | ) |
|   and | ) **Count 2**: (Chernova) |
| **JAMES DOUGLAS BARDING,** | )   18 U.S.C. § 1015(a) |
|   [DOB: 11/3/1952] | )        NMT 5 years and/or $250,000 |
| | )        Supervised Release: NMT 3 years |
| Defendants. | )        Class D Felony |
| | ) |
| | ) **Count 3**: (Chernova) |
| | )   18 U.S.C. § 1425(a) & (b) |
| | )        NMT 10 years and/or $250,000 |
| | )        Supervised Release: NMT 3 years |
| | )        Class C Felony |
| | ) |
| | ) **Count 4**: (both defendants) |
| | )   18 U.S.C. § 1546(a) & (b) |
| | )        NMT 10 years and/or $250,000 |
| | )        Supervised Release: NMT 3 years |
| | )        Class C Felony |
| | ) |
| | )   $100 mandatory penalty assessment, |
| | )   each count, each defendant therein |

## I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

At all times material:

### Introduction - All Counts

1.       An alien may obtain lawful permanent resident status, commonly referred to as

getting a "green card" in several ways, including through the valid marriage to a United States

citizen. Achieving lawful resident status through a marriage allows an alien (alien spouse) to avoid the numerical restrictions on the number of immigrants allowed in the United States, as well as certain visa and other requirements imposed by law.

2. Once married, the United States citizen and alien spouse may submit applications and petitions to the Government of the United States, particularly the United States Citizenship and Immigration Services (USCIS), to obtain permanent residential status for the alien spouse. By filling out and filing a Form I-130 (Petition for Alien Relative) on behalf of the alien spouse, the United States citizen requests the United States to grant the alien spouse lawful permanent resident status without regard to the numerical restrictions noted previously.

3. Once the Form I-130 has been filed, the alien spouse is allowed to file a Form I-485 (Application to Register Permanent Resident or Adjust Status) requesting that the United States Government adjust the alien spouse's status to that of a lawful permanent resident without the alien spouse having to leave the United States. If the alien spouse cannot adjust status this way, the alien spouse must leave the United States, obtain an immigrant visa at a United States Embassy in the alien spouse's home country, and then re-enter the United States. The Form I-485 requires the alien spouse to truthfully identify his nationality, his current status, and his grounds for adjusting his citizenship status. The Form I-130 requires the United States citizen to provide truthful information, including confirmation of the marriage and information regarding the marital union, including the address where the couple would reside.

4. Forms I-130 and I-485 are typically filed together and adjudicated at the same time. In support of these applications, the United States citizen and the alien spouse each submit a Form G-325A (Biographic Information Forms) containing biographic information and various other

2

information, including marriage licenses and other information requested by the USCIS.

5.    Once the I-130 and I-485 are both approved, the alien spouse is granted conditional resident alien status for two years, during which time the alien spouse is entitled to a conditional green card, which denotes the alien spouse's conditional permanent residency in the United States.

6.    During the conditional two year period, both the alien spouse and the United States citizen are subject to inspection and interview by immigration officials.   Typically, officials interview the couple together and then each individual separately, and examine documentary evidence to determine whether the couple are living together as husband and wife in a legitimate and viable marriage.

7.    Within ninety days prior to the expiration of the conditional two year period, the alien spouse and the United States citizen are required to file with USCIS a Form I-751 (Joint Petition to Remove Conditional Basis of Alien's Permanent Residency Status).   The Form I-751 requires that the alien spouse and the United States citizen submit and provide truthful information and also verify certain information, including that their marriage is legitimate, that it remains intact, and that it was not entered into for payment.

8.    An interview under oath of the alien spouse and the United States citizen is conducted by USCIS prior to the conclusion of the conditional period.   If USCIS is satisfied that the marriage is legitimate and that other conditions have been satisfied, immigration officials can approve the petition and the alien spouse's conditional status is lifted, thus making the alien spouse a permanent resident of the United States.

9.    If an alien spouse receives lawful permanent resident status, including through a marriage with a United States citizen, the alien spouse can apply for naturalization after residing in

the United States for five years. To initiate this process, the alien spouse must file a Form N-400 (Application for Naturalization).

10. A Form N-400 (Application for Naturalization) requires the alien spouse to truthfully and accurately identify his current residence, all residences for the previous five years, current and former marriages, and to answer specific questions, including whether the alien spouse has "given any false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal" and has "ever committed a crime or offense for which you were not arrested." The alien spouse must sign the Form N-400 and certify, under penalty of perjury, that the application and any evidence submitted with it are all true and correct.

11. Following the filing of a Form N-400, the alien spouse must be interviewed by an immigration official. During the interview, the official reviews the Form N-400 with the alien spouse. Upon conclusion of the interview, the alien spouse is again required to certify, under penalty of perjury, that the contents of the application and any evidence submitted with it are all true and correct.

12. A naturalized United States citizen may be denaturalized for various reasons, including but not limited to, the willful misrepresentation or concealment of material facts. 18 U.S.C. § 1451.

13. An alien student is admitted to the United States under an F-1 Visa, and must depart within sixty days of completing or terminating study. 8 C.F.R. § 214.2(f)(iv).

14. At all times, the forms described above and information submitted by the alien spouse and by the United States citizen were required to be truthfully and correctly completed in

4

all ways, including but not limited to, the fact that the marriage had to be valid and not entered into for the purpose of evading immigration laws; that the information requested and submitted on the forms and with the forms be truthful; that a valid marital union exist between the married couple; and that the address of the alien spouse and the United States citizen was correct.

15.     DARYA CHERNOVA, defendant, is Ukrainian, and entered the United States on a student visa (F-1 Visa).   CHERNOVA has variously resided at an address at 109 Jackson Street, Apartment B, and later moved to 434 Boonville Road, both in Jefferson City, Missouri.

16.     JAMES DOUGLAS BARDING, defendant, was and remains, a married United States citizen who, had a long-running affair with defendant CHERNOVA.   BARDING lives with his wife in Jefferson City, Missouri, no more than two blocks from the Boonville Road address to which CHERNOVA moved with her two children.

17.     "TD" was a United States citizen, who lived at 1320 Swifts Highway, Apartment I-202, in Jefferson City, Missouri ("Swifts Highway address").

18.     BARDING and CHERNOVA approached at least one United States citizen to marry her so that CHERNOVA could remain in the United States.   The citizen ("TD") agreed to marry her and, on or about March 13, 2005, "TD" and CHERNOVA were married in Cape Girardeau County, in the Eastern District of Missouri, at a ceremony attended by BARDING. The purpose of the arranged marriage was to allow CHERNOVA to assert that she was married to a United States citizen on forms and papers filed with the USCIS so that she would be permitted to remain in the United States.   In other words, "TD" and CHERNOVA entered into the marriage for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 8, United States Code, Section 1325(c).   BARDING explained to "TD" that he and

5

CHERNOVA could get a divorce after she had gained sufficient status to allow her to remain in the United States unmarried.

19.     CHERNOVA and her husband, "TD", filed various forms relating to her immigration status, in which they stated their residence was the Swifts Highway address in Jefferson City, Missouri.   However, only "TD" lived at the Swifts Highway address, and at all times material, CHERNOVA continued to reside at the Jackson Street and Boonville Road addresses, and elsewhere.

20.     At all times material and at BARDING's suggestion, CHERNOVA and "TD" would open accounts, or place CHERNOVA's name on materials to give the appearance that she was living with "TD" and resided at an address and with "TD" when, in fact, she did not live at the address or with "TD."

21.     On or about December 29, 2005, or 291 days or 9 months and 16 days after she married "TD," CHERNOVA gave birth to a child (Child 1) in Cole County, Missouri. BARDING was named as the father, and he provided support for the child.   On or about September 23, 2009, CHERNOVA has a second child (Child 2) and falsely claimed on the birth certificate, on paperwork filed with USCIS, and during a hearing under oath, that her husband, "TD", was the father.   She claimed to have not had sexual relations with anyone other than "TD."   Later, "TD" denied being the father of Child 2, and on June 3, 2010, DNA testing revealed that he was not the father of Child 2.   On October 18, 2011, BARDING caused a legal action (Petition for Declaration of Paternity) to be filed in Miller County, Missouri (the parties consenting to venue in that county), and BARDING admitted that he was the father of Child 2.   On or about October 18, 2011, BARDING was found by order of the court to be the father of Child 2.   Pursuant to that

order, the birth certificate was later changed by order of the Circuit Court of Miller County. naming JAMES DOUGLAS BARDING the father of Child 2, and removing "TD's" name from the birth certificate.

22.     At no time did Child 1 or Child 2 ever reside at the Swifts Highway address, despite CHERNOVA's listing this as their residence address.

23.     During the conspiracy, CHERNOVA and her husband, "TD", filed paperwork with the USCIS, including but not limited to, Forms I-130, I-485, I-751 and N-400.   As a result of these and other various filings, CHERNOVA was granted conditional permanent resident status on November 27, 2008, which was later extended.   As a result of these filings, CHERNOVA was allowed to remain in the United States, and permitted to attend school, and to work.   From time to time, CHERNOVA and "TD" would have to file additional paperwork or attend hearings, meetings or tests in support of her applications for conditional permanent resident status, lawful permanent resident status, and eventual citizenship in the United States, and also to allow her to remain in the United States and work.

24.     In about early 2007, CHERNOVA and BARDING, along with others, committed the crime of conspiracy to defraud the United States in that they began looking for and enlisting a United States citizen to marry a male friend ("OD") so that he could remain in the United States without having to depart, and also to attempt to gain permanent resident status and potentially United States citizenship.   They approached several persons and, in March 2007, procured a marriage license with one of the candidates.   This individual later in the month declined to enter the sham marriage.   However, CHERNOVA and BARDING enlisted another United States citizen, who did, in fact, marry "OD."

## **COUNT 1**
(Conspiracy)

25.     From an unknown date, but at least as early as in or about January 2005, through and including on or about October 3, 2012, in Cole County, the Western District of Missouri, and elsewhere, DARYA CHERNOVA and JAMES DOUGLAS BARDING, defendants, and others known and unknown to the Grand Jury, including "TD," did knowingly and unlawfully combine, conspire, confederate and agree, together and with each other:

(A)     to knowingly defraud the United States, that is, the Department of Homeland Security, United States Citizenship and Immigration Services (USCIS), in regard to the proper administration of laws and regulations as applied to immigration and naturalization, including but not limited to, applications for conditional permanent resident status and for full permanent resident status, in violation of Title 18, United States Code, Section 371; and to commit the following offenses against the United States, that is:

(B)     to knowingly and unlawfully enter into marriage for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 8, United States Code, Section 1325(c);

(C)     to knowingly make a false statement under oath in any case, proceeding and matter relating to, and under, and by virtue of, any law of the United States relating to naturalization, citizenship and registry of aliens, in violation of Title 18, United States Code, Section 1015(a);

(D)     to knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the United States Citizenship

8

and Immigration Services (USCIS), in violation of Title 18, United States Code, Section 1001(a)(2);

(E)    to knowingly procure or attempt to procure, contrary to law, the naturalization of an alien, or documentary or other evidence of naturalization or of citizenship, in violation of Title 18, United States Code, Section 1425(a); and

(F)    to knowingly possess, accept and receive an immigrant visa, permit, alien registration receipt card, or other document prescribed by statute or other regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained, in violation of Title 18, United States Code, Section 1546(a).

## Object, Manner and Means of the Conspiracy

26    It was an object of the conspiracy for CHERNOVA to fraudulently obtain conditional permanent resident status, lawful permanent resident status, and eventual citizenship in the United States.

27.    It was an additional object of the conspiracy that the conspirators conceal the unlawful endeavor, as its discovery would prevent the retention of CHERNOVA's immigration status, and possible United States citizenship, and subject all of the conspirators to criminal prosecution.

28.    It was part of the conspiracy that CHERNOVA,  BARDING, "TD" and others, known and unknown, conspired with each other and with others, known and unknown, in order that CHERNOVA could enter into a fraudulent marriage with a United States citizen for the

9

purpose of obtaining various benefits, including but not limited to: (a) authorization from the USCIS to remain in the United States permanently without having to apply for authorization to the USCIS for extensions of stay in the United States; (b) authorization from the USCIS to seek employment in the United States; and (c) authorization from the USCIS to obtain lawful permanent resident status without regard to the numerical restrictions on the number of immigrants allowed into the United States.

29.     It was a further part of the conspiracy that CHERNOVA and BARDING did approach, solicit and recruit, and attempt to solicit and recruit, at least one United States citizen ("TD") to marry CHERNOVA.

30.     It was a part of the manner and means of the conspiracy that the conspirators would make certain false and misleading statements about the status of CHERNOVA's marriage to "TD" and other matters to USCIS officials and others, including but not limited to, her actual address, the true identity of the father of Child 2, and the fact that they had made deceptive and untrue statements to USCIS officials and others.

31.     It was a part of the conspiracy that CHERNOVA, BARDING, "TD" and others, known and unknown, would produce, arrange to be produced, and consent to be produced, false, fraudulent and misleading documents, and would file, and cause to be filed, documents with false and fraudulent information with various entities, including federal and state government agencies, and private and state institutions in order attempt to deceive the USCIS and other government and private entities.

32.     It was a part of the conspiracy that the conspirators would, by deceit, craft, trickery, false statements and other dishonest means, defraud the United States by interfering with and

10

obstructing the lawful governmental functions of the USCIS, in that CHERNOVA and "TD" would submit documents and writings, and make statements representing these to be true and correct, knowing that the documents, writings and statements were false and incorrect, and had been made and submitted with a fraudulent purpose.

## Overt Acts

33.     In furtherance of this conspiracy and to the effect of its objects, the following acts were committed in the Western District of Missouri, and elsewhere, by one or more of the conspirators:

(A)     In or about February 2005, BARDING approached "TD" to marry CHERNOVA so that she could remain in the United States.

(B)     In or about February 2005, "TD" arranged for a municipal judge to marry him and CHERNOVA.

(C)     On or about March 11, 2005, CHERNOVA and "TD" obtained a license to marry in or near Cape Girardeau County, Missouri.

(D)     On or about March 13, 2005, CHERNOVA and "TD" were married in Cape Girardeau County, Missouri.

(E)     On or about March 13, 2005, BARDING signed the marriage license as a witness.

(F)     On or about October 16, 2005, CHERNOVA signed Forms I-485 and 325A.

(G)     On or before October 16, 2005, "TD," having filled out and signed a Form I-130, gave it to CHERNOVA.

11

(H)     On or about October 20, 2005, CHERNOVA sent and submitted materials to the USCIS in Chicago, Illinois, including a Form I-485, which contained false and misleading statements regarding her marriage, the purpose of her marriage, and her residence.

(I)     On or about June 20, 2006, CHERNOVA and "TD" traveled to Kansas City, Jackson County, Missouri.

(J)     On or about June 21, 2006, CHERNOVA and "TD" appeared before an immigration officer and testified under oath in Kansas City, Jackson County, Missouri.  They each give false information regarding their marriage and address.

(K)     On or about September 2, 2008, CHERNOVA's Form 751 and supporting documents, which contained false and misleading information regarding her marriage and address, among other things, were submitted to the USCIS by United States mail.

(L)     On or about September 1, 2009, a Form N-400 was filed on behalf of CHERNOVA, seeking her naturalization as the spouse of a United States citizen.

(M)     On or about September 23, 2009, CHERNOVA gave birth to a daughter, Child 2, in Cole County, Missouri, and thereafter filed a birth certificate for Child 2, listing "TD" as the child's father.

(N)     On or about February 24, 2010, CHERNOVA appeared before an immigration officer and testified under oath that Child 2's father was "TD", and gave other false information regarding her marriage and address.

(O)     On or about February 24, 2010, CHERNOVA appeared before an immigration officer and testified under oath that she resided at 1310 Swifts Highway, Jefferson City, Missouri, and had not lived at any other address.

12

(P)     On or about April 20, 2010, CHERNOVA, BARDING and "TD" met to go over testimony.

(Q)     On or about April 21, 2010, CHERNOVA appeared before an immigration officer and again testified under oath that Child 2's father was "TD," and added that she had sexual relations with "TD" during their marriage. CHERNOVA also testified about others matters regarding her marriage, residence and relations.

(R)     On or about April 21, 2010, "TD" appeared before an immigration officer and testified under oath regarding his marriage, residence and relations.

(S)     On or about October 11, 2011, BARDING filed a legal action in the Circuit Court of Miller County, Missouri.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### (False Statement Relating to Naturalization)

34.     The factual allegations contained in paragraphs 1 through 24 and 26 through 33 of this Indictment are re-alleged and incorporated by reference as if set forth again.

35.     On or about September 2, 2008, in Cole County, Missouri, in the Western District of Missouri, and elsewhere, DARYA CHERNOVA, defendant, and another person ("TD"), did knowingly make false statements under oath, in a case, proceeding and matter related to, and under, and by virtue of a law of the United States relating to naturalization, citizenship and registry of aliens, in that she declared on various documents, including a Form I-751 (Petition to Remove Conditions on Residence) that her address was 1310 Swifts Highway, Apartment 1-202, Jefferson City, Missouri, and she lived there with "TD," when she then and there well knew that she did not reside at that address, and that she did not live there with "TD."

13

All in violation of Title 18, United States Code, Section 1015(a).

## COUNT 3
(Unlawfully Procure Citizenship or Naturalization)

36.     The factual allegations contained in paragraphs 34 and 35 of this Indictment are re-alleged and incorporated by reference as if set forth again.

37.     On or about September 1, 2009, in Cole County, in the Western District of Missouri, and elsewhere, DARYA CHERNOVA, defendant, did knowingly procure, obtain, apply for, and otherwise attempt to procure, contrary to the law, citizenship and naturalization by the United States government for herself by submitting a Form N-400 (Application for Naturalization) on which she did falsely subscribe as true under penalty of perjury and falsely state under oath that: 1) she lived at 1310 Swifts Highway, Apartment 1-202, Jefferson City, Missouri, and that she lived there with her husband, "TD;" 2) that she had not committed a crime for which she had not been arrested; and 3) answered "no" to the question, "Have you ever given false or misleading information while applying for any immigration benefit or to prevent deportation, exclusion or removal?" when, in truth and in fact: 1) CHERNOVA and "TD" did not reside together, and they did not reside at the Swifts Highway address together; 2) CHERNOVA had committed a crime for which she had not been arrested in that: a) she and BARDING conspired to defraud the United States, by soliciting and attempting to solicit two United States citizens to marry "OD" so that he could complete various immigration forms and documents, in order that he be permitted to remain and work in the United States; and b) CHERNOVA, BARDING and "TD" committed the crime of marriage fraud; and 3) CHERNOVA had given false and misleading information to government officials on her Forms I-485 and 751.

All in violation of Title 18, United States Code, Section 1425(a).

14

## COUNT 4
### (False Swearing in an Immigration Matter)

38.     The factual allegations contained in paragraphs 36 and 37 of this Indictment are re-alleged and incorporated by reference as if set forth again.

39.     On or about February 24, 2010, in the Western District of Missouri, and elsewhere, DARYA CHERNOVA, defendant, under oath, aided and abetted by JAMES DOUGLAS BARDING, defendant, made false statements as to material facts in a Form N-400 (Application for Naturalization) in that she falsely swore that the material facts in the Form N-400 were true and correct wherein the defendant: 1) stated she resided at 1310 Swifts Highway, Apartment 1-202, Jefferson City, Missouri; 2) stated that "TD" was the father of Child 2; and 3) answered "no" to the question, "Have you ever given false or misleading information while applying for any immigration benefit or to prevent deportation, exclusion or removal?" when, in truth and in fact: 1) CHERNOVA did not reside at the Swifts Highway address; (2) "TD" was not the father of Child 2; and (3) CHERNOVA had given false and misleading information to government officials in her Forms I-485 and 751.

All in violation of Title 18, United States Code, Section 1546(a).

**A TRUE BILL**.

/s/

_____

**FOREPERSON OF THE GRAND JURY**

/s/

_____

**ANTHONY P. GONZALEZ**
Assistant United States Attorney
Missouri Bar No. 29922

Dated:     5/22/13

15