# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 13-04026-02-CR-C-SRB |
| **JAMES DOUGLAS BARDING**, | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Tammy Dickinson, United States Attorney, and Anthony P. Gonzalez, Assistant United States Attorney, and the defendant, James Douglas Barding ("the defendant"), represented by Christopher A. Slusher.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does plead guilty to Count 1 of the Indictment, charging him with a violation of 18 U.S.C. § 371, that is, conspiracy to commit offenses against the United States, including to defraud the United States, that is, the Department of Homeland Security, United States Citizenship and Immigration

Services (USCIS), in regard to the proper administration of laws and regulations as applied to immigration and naturalization, including but not limited to, applications for conditional permanent resident status and for full permanent resident status, in violation of Title 18, United States Code, Section 1425(a); to knowingly procure or attempt to procure, contrary to law, the naturalization of an alien, or documentary or other evidence of naturalization or of citizenship, in violation of Title 18, United States Code, Section 1425(a); and to knowingly and unlawfully enter into marriage for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 8, United States Code, Section 1325(c). By entering into this plea agreement, the defendant admits that he knowingly committed this felony offense, and is, in fact, guilty of this offense.

   3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which he is pleading guilty are as follows:

> On April 21, 2010, Darya Chernova and Tim Dunville were to meet with government representatives of the United States Citizenship and Immigration Service (USCIS) in St. Louis, Missouri, in order to be questioned regarding their jointly submitted Forms I-751 and N-400, which were submitted in order to further Chernova's quest to remain in the United States. On about April 20, 2010, and prior to the April 21, 2010 meeting, Chernova and Dunville met with James Douglas Barding in Jefferson City, Missouri, so that they could go over what Chernova and Dunville's testimony would be. Barding encouraged them both to continue with their long-standing agreement to make false statements and claims, in writing and in person, on immigration and naturalization forms to USCIS, and in interviews so that Chernova, a woman with whom Barding was having an affair, could remain in the United States and ultimately obtain U.S. citizenship.
>
> The plan to make false statements and claims to USCIS began in or around late 2004, when Barding, a married man, approached Dunville to marry Chernova, a Ukranian national, who had an expiring visa, and would soon have to leave the United States. Barding knew that, if Chernova married a United States citizen and could convince USCIS that the marriage was legitimate, she could remain in the country, and later potentially gain citizenship. Barding told Dunville that, if he agreed to marry Chernova, he would not have to live with her, but would have to fill out forms falsely stating that they did, and change some bank accounts to

reflect that they shared a life together.  Barding told Dunville that he could get divorced after Chernova gained sufficient status to remain in the United States.  Dunville agreed, and he and Chernova were married in Cape Girardeau County on March 13, 2005, where persons they knew in Cole County would not be likely to find out about the marriage.  Barding flew Dunville and Chernova to Cape Girardeau, and acted as a witness to their wedding.

At no time from the marriage until today did Chernova or Dunville live with each other, although they each filled out forms submitted to USCIS, falsely claiming they both lived at an apartment complex in the 1300 block of Swifts Highway, Jefferson City, Missouri when, in fact, they lived at separate addresses.  The only purpose for their marriage was so that Chernova could evade immigration laws and remain in the United States with Barding.  At various times, including October 20, 2005, and June 21, 2006, Chernova made material false statements to USCIS regarding her address and the true purpose of her marriage.

Chernova was granted conditional permanent resident status on November 27, 2008, as a result of statements made to USCIS which were materially false, including but not limited to, claims that Dunville and Chernova lived together and that her marriage was not fraudulent.  With the knowledge of Barding and Dunville, Chernova submitted documents to USCIS, which purported to show that she and Dunville shared accounts and bills when, in truth, the majority of the submissions were in name only and no accounts or bills were actually shared.

Approximately 9 months and 16 days after she married Dunville, a child was born to Chernova and Barding.  On September 23, 2009, a second child was born to Chernova which she falsely claimed on immigration forms was Dunville's biological child.  In fact, this second child was also fathered by Barding, but Dunville was listed as the father on the birth certificate to prevent USCIS from suspecting that Chernova's marriage to Dunville was fraudulent.

On February 24, 2010, with Barding's knowledge and advice, Chernova appeared before a USCIS officer and falsely testified under oath that her second child was Dunville's when she knew that the father was Barding, and testified that she lived at a Swifts Highway address with Dunville when, in fact, she did not live with Dunville or at the Swifts Highway address.  The false statements regarding her address and the father of her child were made in order to perpetuate the unlawful plan she and Barding had to keep her in the United States.  Additionally, Chernova falsely stated that she had not committed a crime for which she had not been arrested when, in fact, she had committed two crimes, both with Barding, namely: 1) her fraudulent marriage to Dunville; and 2) her attempt to recruit a wife for partner for Oleksandr Nikolayevich Druzenko so that he too could remain in the United States in violation of immigration laws.

On April 20, 2010, Barding met with Chernova and Dunville at a Jefferson City restaurant to prepare for their interview by USCIS personnel regarding her N-400 form and other filings. Barding again advised Chernova and Dunville to stick to their false stories regarding their fraudulent marriage.

On April 21, 2010, Barding gave Chernova and Dunville a ride to the interview in St. Louis from Jefferson City. At the interview, Chernova again falsely gave her address, and falsely claimed that Dunville was the father of her second child, and Barding was aware that these false statements were being made.

Soon after April 21, 2010, Barding approached Dunville and told him that, if he and Chernova stayed together and stuck to their stories, they would not get caught with their plan to deceive USCIS, and Chernova could remain in the United States.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon his plea of guilty to Count 1 of the indictment, charging him with conspiracy to commit offenses against the United States, including to defraud the United States, the maximum penalty the Court may impose is not more than five (5) years' imprisonment, not more than three (3) years' supervised release, a $250,000 fine, and a $100 mandatory special assessment per felony count of conviction, which

4

must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class D felony.

6. **<u>Sentencing Procedures</u>.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three (3) years;

    d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two (2) years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three (3) years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f. any sentence of imprisonment imposed by the Court will not allow for parole;

    g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

    h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

7. **Government's Agreements.**  Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the crimes charged in the conspiracy to commit offenses against the United States for which it has venue and which arose out of the defendant's conduct described above.  Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Count 4 of the indictment, and all counts in case 12-04041-04-CR-C-SRB as to the defendant at sentencing.  The United States also agrees to recommend that the defendant be sentenced at the low end of the applicable Guidelines range.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement.  If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence.  The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement.  The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement.  The defendant further understands and agrees that, if the Government elects to file

additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **<u>Preparation of Presentence Report</u>.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **<u>Withdrawal of Plea</u>.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2L2.1, which provides for a base offense level of 11, and that the offense was committed for other than profit, so that a 3-point decrease is applicable under § 2L2.1(b)(1);

    c. The Government believes that a 2-point enhancement is applicable under either use of a special skill (§ 3B1.3) or organizer (§ 3B1.1(c)), but not both. The defendant is free to argue both do not apply;

    d. The parties agree that the obstruction of justice enhancement does not apply (§ 3C1.1);

    e. The defendant has admitted his guilt and clearly accepted responsibility for his actions. Consequently, he is entitled to a 2-level reduction pursuant to § 3E1.1(a) of the Sentencing Guidelines;

    f. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

    g. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does **not** bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

    h. The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable." However, while the United States does not agree that a sentence outside the Guidelines range is appropriate, the defendant may argue for a sentence outside the Guidelines range. The agreement by the Government not to seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

i. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

j. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

9

a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

b. comment on the evidence supporting the charges in the indictment;

c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentence imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

a. the right to plead not guilty and to persist in a plea of not guilty;

b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. the right to confront and cross-examine the witnesses who testify against him;

e. the right to compel or subpoena witnesses to appear on his behalf; and

f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offense to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used

against him in a prosecution for perjury or making a false statement. The defendant also understands that he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury. The defendant also understands that, as a result of his guilty plea, there may be additional consequences, including the loss of his license to practice law.

15. **Waiver of Appellate and Post-Conviction Rights.**

    a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

    b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant understands and agrees that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100.00 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the

Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **<u>Defendant's Representations.</u>** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his plea of guilty.

21. **<u>No Undisclosed Terms.</u>** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **<u>Standard of Interpretation.</u>** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                                                    **Tammy Dickinson**
                                                    United States Attorney

                                      By           /S/

Dated: _____8/4/15_____         **Anthony P. Gonzalez**
                                                    Assistant United States Attorney
                                                    Missouri Bar No. 29922

      I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: _____8/4/15_____                                     /S/_____
                                                  **James Douglas Barding**
                                                  Defendant

      I am defendant James Douglas Barding's attorney. I have fully explained to him his rights with respect to the offenses charged in the indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, James Douglas Barding's decision to enter into this plea agreement is an informed and voluntary one.

Dated: _____8/4/15_____                                     /S/_____
                                                  **Christopher A. Slusher**
                                                  Attorney for Defendant